**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ANGELO MASI, | Civil Action No. 20-658 (SDW) |
| Plaintiff, | |
| v. | **OPINION** |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | November 12, 2020 |

**WIGENTON**, District Judge.

Before the Court is Plaintiff Angelo Masi's ("Plaintiff") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner") with respect to Administrative Law Judge Beth Shillin's ("ALJ Shillin") denial of Plaintiff's claims for supplemental security income ("SSI") and disability insurance benefits ("DIB") under the Social Security Act (the "Act"). This Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405 (g) and 1383(c)(3). Venue is proper pursuant to 28 U.S.C § 1391(b). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, this Court finds that ALJ Shillin's factual findings are supported by substantial evidence and that her legal determinations are correct. Therefore, the Commissioner's decision is **AFFIRMED**.

**I.      PROCEDURAL AND FACTUAL HISTORY**

      **A.      Procedural History**

Plaintiff applied for DIB and SSI on March 21, 2016, alleging disability as of February 11, 2016. (Administrative Record ("R.") at 58, 59, 177, 184.) The state agency denied Plaintiff's applications both initially and upon reconsideration. (R. 58–107.) Upon Plaintiff's request, ALJ Shillin held an administrative hearing on July 31, 2018. (R. 10.) On December 5, 2018, ALJ Shillin issued a written decision that Plaintiff was not disabled and thus not entitled to disability benefits. (R. 10–20.) The Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (R. 1–6.) Upon judicial review, Plaintiff asks this Court to remand the Commissioner's decision for a new hearing. (D.E. 10 at 20.)

      **B.      Factual History**

Plaintiff is fifty–six years old and lives with his mother and brother's family in his mother's house. (R. 47.) He has previously worked as a salesperson at various retail stores, car dealerships, and a grocery. (R. 39, 40, 43.) In his applications for SSI and DIB, Plaintiff alleged disability due to depression and substance abuse starting in February 2016. (R. 10, 177, 184.) The record contains medical treatment notes beginning in 2015 and the following is a summary of the evidence.

Dr. Julie Kidangan, D.O. ("Dr. Kidangan"), treated Plaintiff from July 2015 to April 2016 as his primary care physician. (R. 271, 297–321.) She noted that Plaintiff's alcohol dependence was in remission. (R. 309, 344.) She also noted that Plaintiff had benign essential hypertension, for which she prescribed medication. (*Id.*) Several times in the record, Dr. Kidangan noted that Plaintiff had no new or worsening medical problems. (R. 302, 305, 309, 312.) She routinely assessed his mood as euthymic and his affect as normal. (*See, e.g.*, R. 314.) By April 2016,

Plaintiff had abstained from alcohol for eight months. (R. 314.) Even so, Dr. Kidangan recommended that Plaintiff continue with his outpatient rehab treatment for alcohol dependence as well as his mental health treatment. (R. 312, 314.)

On June 1, 2016, psychologist Marc Friedman, Ph. D. ("Dr. Friedman"), conducted a clinical interview and performed a consultative mental status evaluation of Plaintiff. (R. 323–25.) Dr. Friedman noted that Plaintiff could travel independently by public transportation, manage his own money, communicate clearly, and follow conversation. (R. 325.) He could also comprehend and follow multi-step directions and adequately maintain concentration. (*Id.*) However, Plaintiff had mildly impaired long-term memory, moderately impaired short–term and working memory, and limited social interaction skills. (R. 324, 325.) Dr. Friedman concluded his evaluation by diagnosing Plaintiff with a major depressive disorder. (R. 325.)

On July 6, 2016, Dr. Brendan Carlock, a state agency psychiatrist, reviewed Plaintiff's medical record and opined that Plaintiff had moderate restrictions of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties maintaining concentration, persistence, or pace. (R. 58–68.)

The record also includes treatment notes from Plaintiff's mental health treatment at Northwest Essex Community Healthcare Network ("Northwest Essex"), where he went three times a week for support group meetings, individual therapy, and self-help sessions between July 2016 and August 2018. (R. 329–42.) On his intake form, Plaintiff shared that he had not taken any psychotropic medication before. (R. 329.) Thereafter, Christine Sukovich ("Ms. Sukovich"), a licensed clinical social worker, took notes on Plaintiff's weekly sessions. (R. 395.) In July 2016, Ms. Sukovich indicated that, although Plaintiff's mood was irritable and depressed, his attitude was cooperative with full and appropriate affect. (R. 333.) His speech was normal. (*Id.*) His

thought process, short-term memory, and long-term memory were intact. (R. 334.)  He also had no suicidal, homicidal, or delusional thoughts. (R. 334.)  Furthermore, Ms. Sukovich observed that Plaintiff was motivated for treatment. (R. 331.)

In October 2016, Dr. Donna Dalgetty ("Dr. Dalgetty") conducted an initial psychiatric evaluation at Northwest Essex. (R. 400–05.)  Again, Plaintiff was alert and cooperative. (R. 337.)  Throughout October, Dr. Dalgetty noted that Plaintiff's speech and affect continued to be normal and calm, while his mood improved from "irritable" to "okay." (R. 333, 337, 407.)  His thought processing was logical, and his memory, attention, and concentration remained intact. (*Id.*)  Plaintiff still had no thoughts of suicide, homicide, or delusions. (*Id.*)  His cognitive functioning, insight and judgment were fair and at baseline. (R. 402, 403.)

Plaintiff's assessments at Northwest Essex remained consistent from 2016 to 2018. (R. 407–62.)  Plaintiff's assessments on mood and speech remained normal. (R. 407–62.)  His cognitive function and memory remained intact. (*Id.*)  His treatment plan after most sessions was to continue with his 12-step alcoholism recovery plan, group support sessions, and self-help meetings, and to remain abstinent from alcohol. (R. 409–16, 418, 419, 421–26.)  With this continuous work, Plaintiff felt he had improved. (R. 419.)  By July 2018, Plaintiff consistently shared about his recovery going well and feeling good about himself. (R. 419, 421–25, 428, 434, 437.)  Plaintiff even began to encourage other support group members. (R. 429.)

**C.     Hearing Testimony**

Plaintiff and his attorney appeared at an administrative hearing before ALJ Shillin on July 31, 2018. (R. 10.)  Plaintiff testified that his mother assists him with cleaning and shopping, although he does his own laundry. (R. 48, 51.)  He cannot cope with large crowds, and he and his mother therefore go grocery shopping in the early morning when the store is empty. (R. 51.)

Plaintiff also testified that he usually reads and play games on his computer, and that he can play video games for up to five hours despite his trouble with focus.  (*Id.*)  In addition to visiting the mental health program at Northwest Essex, Plaintiff also stated that he visits a counselor biweekly, and a psychiatrist every 60 to 90 days for his depression and prior alcohol abuse.  (R. 44.)

ALJ Shillin also heard testimony from an impartial vocational expert, Mary Anderson ("VE Anderson").  Using the *Dictionary of Occupational Titles*, VE Anderson categorized Plaintiff's previous work and then concluded that it could not be done by a hypothetical person with Plaintiff's vocational profile and residual functional capacity ("RFC"), as found by ALJ Shillin. (R. 53–55.)  However, she testified that there were other jobs in the national economy that a person with Plaintiff's age, education, work history, and RFC limitations could perform, including equipment washer, merchandise marker, and routing clerk.  (R. 55, 56.)

## II.    LEGAL STANDARD

### A.    Standard of Review

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner.  *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  Yet, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions.  *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted).  Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'"  *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  Importantly, "[t]his standard is not met if the

Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F. App'x. at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Daniels v. Astrue*, No. 4:08–cv–1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (internal quotation marks omitted) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x. 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). This Court is required to give substantial weight and deference to the ALJ's findings. *See Scott v. Astrue*, 297 F. App'x. 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 F. App'x. at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (internal quotation marks omitted) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976)). Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221–22 (3d Cir. 1984) (citations omitted).

**B.     The Five–Step Disability Test**

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382. An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged." 42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five–step sequential analysis. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz*, 244 F. App'x at 480. If the ALJ determines at any step that the claimant is or is not disabled, the ALJ does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§ 404.1510, 416.910. If the claimant engages in SGA, the claimant is not disabled for purposes of receiving social security benefits regardless of the severity of the

claimant's impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the individual is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in Sections 404.1509 and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rule ("SSR") 85–28, 96–3p, 96–4p. An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If a severe impairment or combination of impairments is not found, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d). If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e). An

individual's RFC is the individual's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. 20 C.F.R. §§ 404.1545, 416.945. The ALJ considers all impairments in this analysis, not just those deemed to be severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96–8p. After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work. 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the claimant is able to perform his or her past relevant work, he or she will not be found disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). If the claimant is unable to resume his or her past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, at step five the Social Security Administration ("SSA") is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III.   DISCUSSION

#### A.

On December 5, 2018, ALJ Shillin held that Plaintiff was not disabled from the alleged onset date through the date of the decision. (R. 20.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful employment since the alleged onset date. (R. 12.) At step two, the ALJ found that Plaintiff had a severe impairment due to major depressive order. (*Id.*) The

9

ALJ considered Plaintiff's alcohol dependence but did not find it to be severe, considering that Plaintiff was sober throughout the relevant period, mentally stable, and able to deal with the stressors in his life. (R. 13.) Additionally, the ALJ considered Plaintiff's hypertension and found it to be non-severe. (*Id.*)

At step three, the ALJ concluded that Plaintiff's impairments, individually and in combination, did not "meet or medically equal the severity of the listings for these respective impairments in 20 C.F.R. Part 404, Subpart P, Appendix I (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.925 and 416.926)." (*Id.*) The ALJ specifically considered Listing 12.04, for Depressive, Bipolar, and Related Disorders. (R. 13–14.) In order to satisfy this requirement, Plaintiff had to prove that he met both the "paragraph A" criteria and either the "paragraph B" or "paragraph C" criteria. *See* 20 C.F.R. 404, Subpart P, Appendix 1 § 12.04. The "paragraph B" criteria require at least one extreme or two marked limitations in any area of functioning. *See* 20 C.F.R. 404, Subpart P, Appendix 1 § 12.02.B. The "paragraph C" criteria require that the mental disorder be "serious and persistent," and supported by evidence of both medical treatment and marginal adjustment. *See* 20 C.F.R. 404, Subpart P, Appendix 1 § 12.02.C. Here, ALJ Shillin found that Plaintiff's "paragraph B" limitations were mild or moderate, not marked or extreme. (R. 13.)[1] She also found no evidence that Plaintiff had significant issues adjusting to changes in his environment. (R. 14.) Because Plaintiff met neither Paragraph B nor Paragraph C criteria, ALJ Shillin concluded that Plaintiff's impairments did not meet the severity of the Listing.

Prior to steps four and five, the ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels, provided he did not climb ladders, scaffolds, or ropes and avoided

---

[1] Specifically, the ALJ found that Plaintiff had a moderate limitation in "understanding, remembering, or applying information," a moderate limitation in "interacting with others," a moderate limitation in "concentrating, persisting, or maintaining pace," and a mild limitation in "adapting or managing oneself." (R. 13–14.)

heights and heavy machinery.  (R. 15, 55.)  She also limited Plaintiff to no contact with the general public, only occasional contact with colleagues, and only simple, repetitive, and routine tasks.  (R. 15.)  At step 4, the ALJ found that Plaintiff was unable to perform his past relevant work as a salesperson or salesclerk because those jobs exceeded his RFC.  (R. 18, 56.)  Lastly, at step 5, the ALJ relied on VE Anderson's testimony to find that Plaintiff was able to perform other work that existed in significant numbers in the national economy, including work as an equipment washer, merchandise marker, and routing clerk.  (R. 19, 55, 56.)  ALJ Shillin therefore concluded that Plaintiff was not disabled under the Act during the relevant period.  (R. 20.)

### B.

On appeal, Plaintiff seeks reversal and remand of the Commissioner's decision.  (*See* D.E. 10 at 20.)  He asserts that ALJ Shillin did not properly (1) evaluate Plaintiff's mental RFC, (2) find that work existed in significant numbers in the national economy that Plaintiff could perform, (3) consider Plaintiff's impairments in combination, and (4) consider Plaintiff's subjective complaints.  (D.E. 10 at 2.)   Plaintiff's moving brief offers nine pages of copied case opinions and administrative rulings, but little argument in the remaining 11 pages for why this Court should vacate the ALJ's decision.  (*See* D.E. 10 at 6–9, 10–14, 15, 16.)   This Court considers the arguments in turn and finds each unpersuasive.

Plaintiff begins by contending that the ALJ did not appropriately assess Plaintiff's mental RFC because she did not rigorously analyze Plaintiff's limitations on comprehension, memory, social interactions, and fatigue.  (D.E. 10 at 10.)  Plaintiff does not point to any specific medical evidence that the ALJ overlooked, except Dr. Friedman's notes that Plaintiff's social interaction skills were limited, and that Plaintiff suffered from fatigue.  (*Id.*)  However, the record shows that the ALJ relied on substantial medical evidence to assess Plaintiff's RFC, including Dr. Friedman's

11

opinion, which the ALJ gave "significant weight." (R. 18.) Specifically, Dr. Friedman's evaluation confirmed that, while Plaintiff had limited social interaction skills and mild to moderate memory impairments, Plaintiff could also communicate clearly, follow conversation, concentrate, and follow multi-step directions. (R. 324–25.)

The ALJ gave Dr. Friedman's opinion significant weight, in part because it was consistent with the evidence as a whole. (R. 18.) For example, Plaintiff's primary care physician from July 2015 to April 2016, Dr. Kidangan, noted several times that Plaintiff had a euthymic mood, a normal affect, and no new or worsening medical problems. (R. 302, 305, 309, 312, 314.) The only prescription drug she gave him was for hypertension. (R. 309.) Similarly, the ALJ relied on Plaintiff's Northwest Essex medical records from July 2016 to August 2018. (R. 16.) Counselors there routinely found that Plaintiff's thought process, cognitive function, and memory skills were intact and not impaired. (R. 333, 334, 407–62.) Reports on his group counseling sessions showed that Plaintiff regularly came well-dressed and was very engaged, opinionated, and talkative in the group discussions. (R. 409–40.) Indeed, ALJ Shillin could have relied on the Northwest Essex treatment notes and evaluations to prescribe fewer RFC accommodations with respect to Plaintiff's comprehension, memory, and social skills. Instead, she restricted Plaintiff's RFC to avoid social interaction and complex tasks, as well as certain physical activities that could be fatiguing. (*See* R. 15.) Thus, the ALJ properly evaluated Plaintiff's RFC, and "the evidence taken as a whole supports the administrator's decision." *Smith v. Califano*, 637 F.2d 968, 973 (1981) (Adams, J., concurring).

Plaintiff continues by asserting that the ALJ did not properly find that work existed in significant numbers in the national economy that Plaintiff could perform, because she failed to follow the holding of *Sykes v. Apfel*, 228 F.3d 259 (3d Cir. 2000), and the corresponding acquiescence ruling from the Social Security Administration. (D.E. 10 at 14.) Under *Sykes*, where

a claimant has both exertional and nonexertional limitations, the ALJ may not rely solely on the Social Security Administration's medical-vocational guidelines to deny disability benefits. *See Sykes*, 228 F.3d at 270. The "testimony of a vocational expert or other similar evidence" is required. *Id.* at 273. Here, ALJ Shillin explicitly relied on both the "Medical-Vocational Rules as a framework" and the "testimony of the vocational expert," which she additionally determined was "consistent with the information contained in the *Dictionary of Occupational Titles*." (R. 19–20 (emphasis altered).) Plaintiff's argument to the contrary is therefore meritless.

Next, Plaintiff argues that ALJ Shillin failed to consider the combination of all Plaintiff's impairments, including those found to be moderate or not severe. (D.E. 10 at 16.) After copying a decision that he does not address, Plaintiff lists mental limitations on comprehension, memory, concentration, social skills, and fatigue as impairments that the ALJ failed to consider. (*Id.* at 14–16.) However, the ALJ considered all of these factors while assessing Plaintiff's RFC and Plaintiff offers no additional evidence that the ALJ failed to consider. (R. 15.) The ALJ relied on the state agency psychiatrist's medical assessment and the opinion of Dr. Friedman to evaluate the combination of Plaintiff's impairments. (R. 18.) Both reports included observations on Plaintiff's mental limitation on comprehension, memory, concentration, and social skills. (R. 17, 73–79, 87–90, 323–26.) Having given weight to, detailed, and analyzed both reports and the limitations listed therein, ALJ Shillin's consideration of Plaintiff's impairments was proper and supported by substantial evidence.

Plaintiff's final contention is that the ALJ did not properly consider Plaintiff's subjective complaints. (D.E. 10 at 16.) This contention is a response to ALJ Shillin's observation that the objective medical evidence is "not entirely consistent" with the subjective evidence, because the objective evidence does not demonstrate significant psychiatric limitations. (R. 17–18.)

Specifically, Plaintiff's psychological mental assessment, psychiatric mental status examination, and clinical interview all primarily describe Plaintiff's limitations as moderate. (R. 18, 73–79, 87–90, 323–26.) However, the record confirms that the ALJ properly considered Plaintiff's subjective complaints. (R. 18.) ALJ Shillin described Plaintiff's subjective complaints and daily activities in detail, and her consideration of these subjective complaints is reflected in her prescribed limitations. (*See* R. 15–16.) For example, limitations to avoid operating heavy machinery, interacting with the general public, and engaging in complex tasks demonstrate the ALJ's concern for Plaintiff's fatigue, social difficulties, and lack of concentration, respectively. As the ALJ stated, such limitations are supported by Plaintiff's subjective complaints but not entirely warranted by the objective medical evidence, "which would *per se* suggest a more restrictive [RFC] assessment." (R. 17–18.) Plaintiff has not met his burden to show that the record supports any additional limitations, and the ALJ's finding is supported by the substantial evidence.

## IV.    CONCLUSION

For the foregoing reasons, this Court finds that ALJ Shillin's factual findings were supported by substantial credible evidence in the record and her legal determinations were correct. Therefore, the Commissioner's determination is **AFFIRMED**. An appropriate order follows.

s/ *Susan D. Wigenton*  
**SUSAN D. WIGENTON**  
**UNITED STATES DISTRICT JUDGE**

Orig:  Clerk  
cc:    Parties